William HACKETT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9803–CR–186.

Supreme Court of Indiana.

Oct. 4, 1999.

Ann M. Skinner, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

William Hackett was convicted of the murder of Carol Wilson and burglary as a Class A felony. He was sentenced to concurrent terms of sixty and forty-five years, respectively. He raises two issues for our review in this direct appeal: (1) whether he is entitled to a new trial because an alternate juror observed him in his jail clothes and (2) whether the trial court erred in its finding of aggravating and mitigating circumstances. We affirm the trial court.

### Factual and Procedural Background

The following facts were reported in Hackett's statement to police. Hackett began dating Danielle Mason in March or April of 1996. At the time Mason shared an apartment with her mother, Carol Wilson. Sometime near the end of June Hackett took a key to the apartment from Mason's keyring without her knowledge or permission. After consuming a considerable amount of alcohol on June 29, 1996, Hackett used the key to enter the apartment at around 4:30 a.m. He went upstairs and found Wilson sleeping naked in her bedroom. Hackett got into bed with Wilson and the two had sex. "[N]o words" were exchanged but he had "scratches" on his back. Hackett then "passed out" and awoke several hours later in Mason's room. He noticed blood on his arm, hands and knee and went to the bathroom to wash it off. He saw Wilson's bloodied body lying on the floor in her bedroom, noticed "a whole lot of blood" on her bed and the wall, and saw a knife with blood on it. Hackett checked Wilson's purse for money but found none. He then took the bloody knife and left the apartment, locking the door behind him. He discarded the knife and key in a nearby woods.

Wilson died as the result of multiple stab wounds. Hackett's bloody palmprints

were discovered on the wall of Wilson's bedroom.

## I. Jail Clothes

 Hackett contends that his conviction must be reversed because an alternate juror observed him in his jail clothes. On the morning of the second day of trial a deputy sheriff walked Hackett and two other inmates past the jury room en route to a holding cell. The three men were clad in orange jumpsuits. The door to the jury room was open, and Hackett later told the trial court that he had seen "one [juror], eye to eye." After a brief colloquy it was determined that Hackett had seen Ms. Boaz, the alternate. At Hackett's request the trial court questioned Boaz in open court with Hackett, defense counsel and the State present. Boaz told the trial court that she had seen an officer walk past with three men in orange jumpsuits and that she believed one of them to be Hackett. The trial court told her that it was "not going to say whether or not [Hackett] was one of those persons," but asked, if it were Hackett, would that affect her "ability to give him a fair and impartial trial." She responded "[n]o."

Boaz also told the trial court that she believed another juror had seen Hackett in an orange jumpsuit, but the two had not spoken about the incident. The alternate described the other juror as having "silvery hair." Defense counsel then asked that Mr. Poland, apparently the only juror fitting that description, be questioned. The trial court admonished Boaz "not to mention anything that happened in the courtroom with regard to this inquiry," and she was then returned to the jury room.

Poland was then brought out and asked if he had seen the defendant since court ended the previous evening. He responded that he had not, and defense counsel was offered but declined the opportunity to question him further. The trial court admonished him not to mention the questioning to the other jurors. Defense counsel did not ask that any other jurors be questioned or seek any additional admonishment.

Hackett asserts that "[t]he presumption of innocence became a nullity when two jurors observed [him] in jail clothes during trial." He points to *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), in which the U.S. Supreme Court held that compelling a defendant to go to trial in jail garb violates the due process and equal protection provisions of the Fourteenth Amendment. Although the defendant in *Estelle* requested his civilian clothes when he learned he was going to trial, the request was denied and he was tried "in clothes that were distinctly marked as prison issue." *Id.* at 502. The Court reasoned that this undermined the presumption of innocence. "The defendant's clothing is so likely to be a continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play." *Id.* at 505, 96 S.Ct. 1691 (citing *Turner v. Louisiana*, 379 U.S. 466, 473, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965)). As this Court observed in *Gregory v. State*, 274 Ind. 450, 454, 412 N.E.2d 744, 747 (1980), a "crucial component in *Estelle* was that the jury would be continuously influenced throughout the trial by the defendant's obvious appearance in jail attire."

In *Estelle* the entire jury viewed the defendant in jail clothes throughout the entire trial. Here, an alternate juror who did not participate in deliberations viewed the defendant in jail attire for a matter of seconds. Greater exposure has been held no basis for reversal. *See Misenheimer v. State*, 268 Ind. 274, 282, 374 N.E.2d 523, 529 (1978) (entire jury waiting in hallway inadvertently saw the defendant taken through a barred door from a lock-up

area); *see also Bailey v. State,* 519 N.E.2d 1238 (Ind.1988) (three jurors and an alternate viewed the defendant in the custody of the sheriff).

■ Hackett also suggests that the trial court "erred by failing to determine the extent to which the exposure of Hackett in jail clothes was viewed or learned of by the jurors." After Ms. Boaz stated that she thought another juror with "silvery hair" saw Hackett in an orange jumpsuit, defense counsel concluded that the juror was Poland and asked that he be brought out for questioning. This was done and resulted in his denying having seen Hackett after court concluded the previous evening. Defense counsel did not suggest that any other jurors be questioned. Under these circumstances we agree with the State that Hackett has waived any argument that the trial court failed to take the further action of questioning other jurors or offering additional admonishments.

## II. Sentencing

Hackett contends that the trial court erred in its finding of aggravating and mitigating circumstances.[1] The trial court's sentencing order lists the following aggravating circumstances: (1) a history of criminal delinquent activity; (2) need for corrective treatment that can best be provided by commitment to a penal facility; (3) Hackett had recently been sentenced for another offense and was on probation for that offense at the time of the instant offenses; (4) imposition of a reduced sentence would depreciate the seriousness of the crime; (5) "the evidence against the defendant was overwhelming;" and (6) "this was a heinous crime." It found Hackett's youthful age, nineteen, as the sole mitigating circumstance.

### A. Improper Aggravator(s)

■ Of these aggravators Hackett challenges only the fourth one, arguing it was improper to aggravate his sentence on the basis that a reduced sentence would depreciate the seriousness of the offense because the trial court never considered giving him a sentence below the presumptive. As this Court has noted on many occasions, "this aggravator cannot be used to justify an enhanced sentence. This aggravating factor may be used only when considering the imposition of a sentence of shorter duration than the presumptive sentence." *Ector v. State,* 639 N.E.2d 1014, 1016 (Ind.1994); *accord Garrett v. State,* 714 N.E.2d 618, 622 (Ind.1999); *Jones v. State,* 675 N.E.2d 1084, 1088 (Ind.1996). Although this Court has upheld a "sentence enhancement based upon a finding that a sentence less than an *enhanced* term sought by the prosecution would depreciate the seriousness of the crime," *Ector,* 639 N.E.2d at 1016 (emphasis in original), the trial court made no such finding here. Accordingly it erred in considering this factor to be aggravating.

■ Hackett also suggests, albeit obliquely, that the trial court improperly

---

1. Hackett's sole contention is one of improper aggravators and mitigators. He does not invoke the separate "manifestly unreasonable" doctrine of Appellate Rule 17(B). As many of our opinions highlight, the two are different inquiries with different standards. *See, e.g., Angleton v. State,* 714 N.E.2d 156 (Ind.1999) (discussing "The Sentencing Statement" and "Manifestly Unreasonable" in separate sections); *Carter v. State,* 711 N.E.2d 835 (Ind. 1999) (same); *Page v. State,* 689 N.E.2d 707 (Ind.1997) (addressing in separate sections "Aggravating. and Mitigating Circumstances for Sentence Enhancement" and "Sentence is Manifestly Unreasonable"); *Scheckel v. State,* 655 N.E.2d 506 (Ind.1995) (reviewing in separate sections "The Sentencing Statement" and "Reasonableness of the Sentence"); *Hammons v. State,* 493 N.E.2d 1250 (Ind. 1986) (addressing "Sentencing Considerations" and "Sentence Manifestly Unreasonable" in separate sections). Although the State addresses Hackett's claims regarding the aggravating and mitigating circumstances, it also melds Appellate Rule 17(B) into its argument. We address only the claim raised by Hackett.

considered his denial of guilt to be aggravating.[2] Although there is no mention of it in the sentencing order, Hackett quotes the trial court's sentencing statement in which it observed that "the evidence against you was overwhelming at the trial. And you—you're either a—a—a very evil person or a very sick person because you are still in total denial." Hackett contends that, because he "was well within his rights to continue to assert his belief that he was not guilty," the trial court could not aggravate his sentence on that basis. We find no merit to this argument.

The trial court's sentencing statement merely mentioned that Hackett was "still in total denial" despite "overwhelming" evidence of his guilt. This did not infringe upon his privilege against self-incrimination when he admitted in his statement to police that he had had sex with Wilson, woke up in another room with blood on him, observed Wilson's bloody body, denied any memory of the stabbing but disposed of the knife after leaving the apartment, and pursued an intoxication defense at trial. Hackett's situation is unlike *Angleton v. State*, 686 N.E.2d 803, 816 (Ind. 1997), where we held that it was improper to consider that the defendant "knew what happened, and it was just a question of whether or not the [police] could eventually put it together, as to what happened" as an aggravating circumstance. The finding of error in *Angleton* was predicated on the constitutional privilege against self-incrimi-

nation that "protects [defendants] from having to confess to the police." *Id.* Although Hackett essentially confessed to the police, he then prepared a brief statement to the trial court before sentencing in which he stated "[i]n my heart, I feel that I did not commit the offense. I am hopeful that the person who killed Caroline Wilson will be found and arrested. I cooperated with the police, because I wanted them to locate the person who committed the crime. . . ." The trial court did not err in saying that Hackett was "still in total denial" nor did this infringe upon his privilege against self-incrimination.

## B. *Failure to Find a Mitigator*

Hackett argues that the trial court should have found his alcoholism and intoxication on the night of the crime as a mitigating circumstance. He asserts that the State presented no evidence to contradict that he was intoxicated at the time of the killing or that he was an alcoholic. He also points out that the trial court gave two instructions on intoxication, that he presented a witness to support it as a defense at trial, and that he admitted to the "moderate" use of alcohol in the presentence report.[3]

■ The finding of mitigating circumstances is within the discretion of the trial court. *Legue v. State*, 688 N.E.2d 408, 411 (Ind.1997). An allegation that the trial

---

2. Hackett captions his argument as the improper consideration of "an" aggravator, repeats this singular usage in the summary of his argument, and discusses only the depreciate the seriousness of the crime aggravator under the subheading "Improper Aggravator." However, his brief also includes a subheading entitled "Denial of Guilt" in which he mentions that it is improper to rely on a defendant's assertion of innocence as an aggravator, citing *Angleton v. State*, 686 N.E.2d 803, 816 (Ind.1997) and *Linger v. State*, 508 N.E.2d 56, 64 (Ind.Ct.App.1987).

3. Hackett called his mother and a sentencing consultant to testify at his sentencing hearing.

When asked if there was a "familial history with alcoholism in your—in your family or his dad's family," his mother responded "Yes. Somewhat; yes." She also agreed with defense counsel's view that "there was a great deal of alcohol consumed [on the night of the killing]." The sentencing consultant testified that Hackett had talked to her "about how his drinking and friends had caused his life to change significantly. . . ." Her report mentioned that Hackett believed "his most serious problems began when he was introduced to alcohol" and that after his drinking increased "his life was never the same."

court failed to identify or find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind.1999). The trial court is not obligated to accept the defendant's contentions as to what constitutes a mitigating circumstance. *Legue*, 688 N.E.2d at 411.

■ This Court has previously rejected a claim that a trial court failed to find as a mitigating circumstance that the defendant "was an alcoholic and was drunk at the time the offense was committed...." *See Wilson v. State*, 533 N.E.2d 114, 117 (Ind. 1989) (per curiam). "The fact that appellant was drunk at the time the offense was committed went only to his ability to form intent which question was fully presented to the jury and determined by [it]." *Id.* More recently, in *Legue*, 688 N.E.2d at 411, this Court observed that

> we are reluctant to hold·that mitigating consideration is necessarily required for sentencing when, at the time of an offense, the defendant was intoxicated.... Finding such circumstance to be mitigating may involve the consideration and evaluation of various factors, among them the degree of intoxication and the defendant's culpability in the knowing and voluntary consumption of alcohol. These matters are best left to the sound discretion of the trial court.

The trial court heard all the evidence relating to intoxication at trial and additional evidence relating to Hackett's alleged alcoholism at sentencing. Although it mentioned the possibility that Hackett was "sick," the trial court did not make a specific finding of mitigation based on alcoholism or intoxication at the time of the offense. This was not an abuse of discretion.

### C. *Sentence Enhancement*

■ In sum, the trial court found several aggravating circumstances, only one of which was improper, and did not abuse its discretion by failing to find mitigating circumstances. A single aggravating circumstance may be sufficient to enhance a sentence. *See Angleton v. State*, 714 N.E.2d 156, 160 (Ind.1999). When a trial court improperly applies an aggravator but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Shields v. State*, 699 N.E.2d 636, 639 (Ind.1998). In light of the other significant aggravating circumstances, we affirm the sentence enhancement here.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.