## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 06 2017, 9:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael C. Borschel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cameron Washington,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 6, 2017

Court of Appeals Case No.
49A02-1608-CR-1848

Appeal from the Marion Superior Court.
The Honorable Lisa F. Borges, Judge.
Cause No. 49G04-1502-F1-5723

**Darden, Senior Judge**

# Statement of the Case

[1] A jury found Cameron Washington guilty of two counts of rape as Level 1 felonies,[1] armed robbery as a Level 3 felony,[2] and kidnapping as a Level 3 felony.[3] Finding four aggravating factors and one mitigating factor, the trial court sentenced him to thirty-five years each for both counts of rape, with twenty years executed, five years in community corrections, ten years suspended, and five years of probation, as well as nine years executed for the robbery and kidnapping counts – all to be served concurrently. Washington appeals, arguing that the trial court erred when it cited his expunged juvenile adjudication as an aggravating factor in determining his sentence. We conclude that the trial court erred when it cited the improper aggravating factor but that the error does not require reversal. We affirm.

# Issue

[2] The sole issue Washington presents (restated) is whether the trial court abused its discretion when it sentenced him to an enhanced sentence based in part on his criminal history, where his history of contact with the criminal justice

---

[1] Ind. Code § 35-42-4-1 (2014).

[2] Ind. Code § 35-42-5-1 (2014).

[3] Ind. Code § 35-42-3-2 (2014).

Washington was found guilty of additional felonies that were vacated by the trial court due to double jeopardy concerns.

system was comprised solely of two expunged juvenile true findings and the underlying arrests.

## Facts and Procedural History

On the evening of February 12, 2015, E.H., who has cerebral palsy, drove to her friend's house located in Indianapolis. She pulled into the driveway, opened the driver's side door, and, using her cell phone, began to send a text message to her friend to say she had arrived. While she texted, Washington approached her vehicle and pointed a gun at her face. Washington then entered the back seat of E.H.'s car and instructed her to drive.

E.H. drove through the neighborhood until Washington told her to stop. Washington then began to look through the vehicle's console and glove compartment for valuables. He also riffled through E.H.'s purse, but found nothing of value. E.H. told Washington she had no money. She used her cell phone to show him her extremely low bank account balance. Washington took her cell phone and sat in complete silence for a moment.

Washington then ordered E.H. to get in the back seat of the car with him, and forced her to perform oral sex on him. She did so for approximately one to two minutes until Washington told her to stop. Washington then positioned himself behind E.H. and raped her vaginally. He then pulled his pants up and leaned over the seat toward the front of the car. At that point, E.H. exited the car and ran, screaming "[h]elp, help, help." Tr., Vol. 2, p. 30.

[6]     Washington chased E.H. E.H. testified that she thought she heard three gun shots as she ran. E.H. reached a neighboring home, banged on the door for help, entered the house when the home owner opened the door, and told the owner that she had been raped. The home owner called 911. The police arrived shortly thereafter. E.H. gave a statement to the officers, after which, she was taken to the hospital for a rape kit examination.

[7]     Law enforcement located E.H.'s vehicle. A K-9 unit led police officers from her vehicle to Washington's home, located one block away. The officers knocked on the door, and Washington's parents answered and allowed the officers to enter the home. The officers asked Washington where he had been that evening. Washington told the officers that he had been at a YMCA that was within walking distance of his home. Washington denied involvement in the incident involving E.H.

[8]     E.H. was later shown a photo array and she identified Washington as her attacker. Forensic testing of the rape kit revealed that the DNA profile of the seminal fluid found on E.H. matched Washington's DNA profile.

[9]     The police detective assigned to the case obtained a search warrant to search Washington's house. A Glock handgun, that matched the description E.H. had provided, was recovered. The gun contained fifteen live rounds, and had a maximum capacity of eighteen rounds.

[10]    Washington was arrested and charged with two counts of rape and two counts of criminal confinement, as well as robbery, kidnapping, and pointing a firearm

at another. A jury found Washington guilty of all seven counts and the trial court entered judgment of conviction. Prior to sentencing, a presentence investigation report (PSI) was prepared which revealed that Washington had two prior contacts with the juvenile system that had been expunged. At sentencing, the trial court amended the judgment out of double jeopardy concerns and vacated Washington's convictions for criminal confinement and pointing a firearm at another.

[11] The trial court sentenced Washington to thirty-five years, with twenty years executed, five years in community corrections, and ten years suspended for both counts of rape. He received nine years executed for robbery, and nine years executed for kidnapping, with all sentences to be served concurrently. Washington's sentences were within the statutory range. *See* Ind. Code §§ 35-50-2-4 (2014) and 35-50-2-5 (2014).[4]

[12] Washington appeals. Additional facts are provided as necessary.

---

[4] A person who commits a Level 1 felony shall be imprisoned for a fixed term of between twenty and forty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4 (2014).

A person who commits a Level 3 felony shall be imprisoned for a fixed term of between three and sixteen years, with the advisory sentence being nine years. Ind. Code § 35-50-2-5 (2014).

# Discussion and Decision

## I. Expunged Juvenile Record

[13] Washington contends the trial court abused its discretion because it enhanced his sentence using, in part, his expunged juvenile adjudications as an aggravating factor. The court noted at sentencing that his juvenile record showed a history of contact with the juvenile justice system. The State maintains that no error occurred because "arrest records and juvenile records can be considered by the trial court at sentencing as evidence of a defendant's character, even in the absence of a conviction or true finding." Appellee's Br. p. 10.

[14] Sentencing decisions rest within the sound discretion of the trial court and, if the sentence is within the statutory range, are reviewed on appeal for an abuse of discretion. *See Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* (quotation omitted). Our Supreme Court has explained:

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration,

or the reasons given are improper as a matter of law.

*Id.* at 490-91.

[15] During the sentencing hearing, Washington's counsel alluded to Washington's expunged criminal history, as listed in the PSI. The criminal history was comprised of two separate arrests that occurred when Washington was a juvenile that resulted in adjudications of true findings. Each adjudication contained a notation indicating the record was expunged on November 30, 2012.

[16] Washington argued that the expunged arrests and true findings should not be used as aggravating factors in deciding his sentence. The State maintained that whereas the court could not consider the true findings as aggravators, it could consider Washington's arrests, that is, his contact with the legal system, when determining his sentence.

[17] Washington then submitted for the trial court's consideration a letter from the victim of one of his expunged juvenile adjudications. The trial court stated, "So I note the arrest, and I'm noting it because [Washington has provided] a letter from [the victim] asking [the court to have mercy on Washington]. But it – I can't even recognize [the letter] without referring back to the fact that there was that arrest. So I'll just note that, okay?" Tr., Vol. 3, p. 160.

[18] Washington's counsel explained that he submitted the letter because the PSI listed the juvenile history. The trial court then stated, "I'm not considering any

adjudication of the juvenile offense, the juvenile arrest, but taking into consideration [the victim's] plea for mercy [on Washington], I can't even consider that without noting the arrest, so I note it, okay?" *Id*. at 161. Counsel responded, "Understood, Judge. Thank you." *Id*.

[19] The trial court then found the following aggravating factors: that Washington violated his placement on pretrial release by being arrested for a new offense, that E.H. has cerebral palsy, and that the offenses Washington committed against E.H. will have a lasting effect on her quality of life. The court also found as an aggravating factor that "*[Washington] has a history of contact with the juvenile justice system, and I'm going to leave it at that, as an aggravating circumstance.*" *Id.* (emphasis added).

[20] Indiana courts have recognized that criminal behavior reflected in delinquent adjudications can serve as the basis for enhancing an adult criminal sentence. *Ryle v. State*, 842 N.E.2d 320, 321 (Ind. 2005). Our Supreme Court has emphasized that it is the criminal behavior reflected in earlier proceedings rather than the adjudications that is the proper proof of a prior history of criminal behavior. *Id.* However, under Indiana law, expunged juvenile records cannot be considered as aggravating factors in the sentencing decision. *See Owens v. State*, 544 N.E.2d 1375, 1378-79 (Ind. 1989).

[21] If a court grants an expungement petition for juvenile records it "shall order each law enforcement agency and each person who provided treatment for the child under an order of the court to send that person's records to the court."

Ind. Code § 31-6-8-2(d) (repealed 1997) (recodified as Ind. Code § 31-39-8-5 (1997)).  Once the records reach the court, they "may be destroyed or given to the person to whom [the records] pertain."  Ind. Code § 31-6-8-2(e) (repealed 1997) (recodified as Ind. Code § 31-39-8-6 (1997)).  Per our Supreme Court in *Owens*, "[p]roperly implemented, these procedures render expunged juvenile records unavailable to be considered as aggravating sentencing factors."  544 N.E.2d at 1378.  We find that the trial court erred when it considered as an aggravating factor Washington's expunged juvenile record.

## 2.  Invited Error

[22]     The State argues that the use of Washington's expunged juvenile record as an aggravating factor is not reversible error because Washington invited it by introducing into evidence the letter from the victim of the offense.  We disagree.

[23]     The invited error doctrine forbids a party to take advantage of an error that he "commits, invites, or which is the natural consequence of [his] own neglect or misconduct."  *Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014).  "[E]rror invited by the complaining party is not reversible error."  *Booher v. State*, 773 N.E.2d 814, 822 (Ind. 2002) (citation omitted).

[24]     Washington introduced a letter from the victim of one of his juvenile offenses, wherein the victim asked the trial court to have mercy on Washington at sentencing in the present case.  This caused the trial court to struggle with whether to accept the letter.  The court noted that "I'm not considering any adjudication of the juvenile offense, the juvenile arrest, but taking into

consideration [the victim's] plea for mercy [on Washington], I can't even consider that without noting the arrest, so I note it, okay?" Tr., Vol. 3, p. 161.

Washington did place the trial court in a quandary regarding noting the submission of the victim's letter. However, Washington did not invite the trial court's error in using his expunged juvenile record as an aggravating factor for sentencing purposes.

### 3. Other Valid Aggravating Factors

The State further argues that if the use of Washington's expunged juvenile record as an aggravating factor was error, no reversible error occurred because the trial court cited three valid aggravators to support Washington's enhanced sentence. We agree.

"A single aggravating circumstance may be sufficient to enhance a sentence. When a trial court improperly applies an aggravator but other valid aggravating circumstances exist, a sentence enhancement may still be upheld." *Hackett v. State*, 716 N.E.2d 1273, 1278 (Ind. 1999) (internal citations omitted). We will remand for resentencing if we cannot say with confidence that the trial court would have imposed the same sentence if it considered the proper aggravating and mitigating circumstances. *McCann v. State*, 749 N.E.2d 1116, 1121 (Ind. 2001).

Here, the trial court considered one improper aggravating factor, but found as valid aggravating factors that Washington violated his placement on pretrial release, that E.H. has cerebral palsy, and that the offenses Washington

committed against E.H. will have a lasting effect on her quality of life. *See* Ind. Code § 35-38-1-7.1(a)(1), (6), (7) (2014) (in determining what sentence to impose, court may consider as aggravating circumstances (among others) that harm suffered by victim was significant, defendant violated conditions of pretrial release, and victim of offense was person with disability). The trial court sentenced Washington to an aggregate sentence of thirty-five years for his most serious offenses, rape – five years less than the maximum sentence allowed by statute. Washington received the advisory sentence for this Level 3 felonies. The trial court found Washington's youth a mitigating factor, and ordered twenty years of Washington's sentence executed, five years served in community corrections, ten years suspended, and five years' probation. Based on the foregoing, we can say with confidence that the trial court would have imposed the same sentence even if it had not found the improper aggravator. *See*, *e.g.*, *McCann*, 749 N.E.2d at 1121 (declining to remand for resentencing where trial court considered one improper aggravating circumstance, but considered three other valid aggravating circumstances).

# Conclusion

[29] For the reasons stated, we find that the trial court erred when it enhanced Washington's sentence using, in part, his expunged juvenile record as an aggravating factor, but that the error does not warrant reversal because the trial court found additional, valid aggravating factors to support the enhanced sentence.

[30]     Affirmed.

Kirsch, J., and Barnes, J., concur.