## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 12 2017, 9:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer D. Wilson Reagan
Wilson & Wilson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marcus A. Hardy,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 12, 2017<br><br>Court of Appeals Case No.<br>41A01-1605-CR-1012<br><br>Appeal from the Johnson Circuit Court.<br>The Honorable K. Mark Loyd, Judge.<br>Cause No. 41C01-1509-MR-1 |

**Barteau, Senior Judge**

# Statement of the Case

[1] Marcus Hardy was convicted by jury of murder, a felony,[1] and armed robbery as a Level 3 felony.[2] He was sentenced to sixty-five years executed for the murder conviction and sixteen years executed for the armed robbery conviction, with the sentences to run concurrently. He appeals his sentence. We affirm.

# Issue

[2] Hardy raises one issue for our review which we restate as whether the trial court abused its discretion in sentencing him.

# Facts and Procedural History

[3] On August 28, 2015, Hardy received a call from an acquaintance who told him that an individual named Douglas Lane wanted to purchase a large quantity of marijuana, and that it would be easy for Hardy to rob Lane of $3,200.00. The acquaintance provided Hardy's contact information to Lane, and Lane contacted Hardy. They arranged for the purchase of the marijuana to take place at an apartment located in Greenwood, Indiana. Hardy did not have any marijuana. He carried to the apartment a duffel bag that contained a loaded handgun.

---

[1] Ind. Code § 35-42-1-1(2) (2014).

[2] Ind. Code § 35-42-5-1 (2014).

[4] Lane met Hardy at the entrance to the apartment building and escorted him upstairs to the apartment. Several individuals were in the apartment when Hardy arrived. Lane led Hardy to the bedroom to conduct the transaction. Jesse Moringer and Justice Dunn were waiting in the bedroom.

[5] Hardy shut the bedroom door and stood in front of it. He placed his duffel bag on a nearby dresser. When Lane asked to see the marijuana, Hardy opened his bag, removed the handgun, and cocked it. He pointed to a gang tattoo on his chest and said, "[t]his is real," and that he had "12 bullets in the gun." Tr. p. 60. He told the individuals in the room to place their money on the dresser.

[6] Moringer placed his portion of the money on the dresser. Lane reached into his left pocket and "[was fiddling]" with his money. *Id*. at 63. Hardy approached Lane to take his money. Lane, at the time seated on the bed, "jumped up" and began to wrestle with Hardy. *Id*. at 65. While they wrestled, Moringer left the room but Dunn remained. Hardy discharged his handgun and the bullet lodged in the wall. Dunn then fled the room. Hardy and Lane continued to struggle. Hardy fired a second shot. The bullet struck Lane in the head and killed him.

[7] Hardy ran out of the apartment, but returned immediately because he had left his duffel bag behind. When he returned to retrieve his bag, he took Lane's cell phone and removed cash from Lane's pocket. Hardy then fled the apartment and drove away in his vehicle.

[8] First, Hardy met with the individual who told him about the robbery opportunity, and paid the individual for the information. He then went to an

apartment on the northwest side of Indianapolis and attempted to sell Lane's cell phone.

[9] Police officers, as part of their investigation of the murder, obtained Hardy's and Lane's cell phone numbers. They used the information to track the cell phones' locations, and determined that both phones were in an apartment building on the northwest side of Indianapolis. The police watched the building. When Hardy left the building, and entered his vehicle, the officers attempted to initiate a traffic stop. However, Hardy led the officers on a high-speed chase. He eventually abandoned his car, climbed a fence, and fled on foot into the woods. The officers were unable to locate him.

[10] The officers obtained and executed search warrants for the northwest Indianapolis apartment and for Hardy's vehicle. They found Lane's cell phone in a trashcan in the apartment. In Hardy's vehicle, they found the duffel bag, Hardy's cell phone, and a partially loaded magazine for a handgun.

[11] After eluding the police, Hardy spent the night in the woods. In the morning, he approached a group of individuals who agreed to drive him to a hotel. Later that morning, Hardy went to a store and replaced his lost cell phone. He then arranged for an acquaintance to take him to his friend Clarence's apartment in northwest Indiana. Because Hardy did not obtain a new cell phone number, the police could track the location of his new cell phone. Officers eventually determined that Hardy's new cell phone was at a mall in Calumet City, Illinois.

[12] On Monday, August 31, 2016, the officers apprehended Hardy at the mall. Hardy had traveled to the mall with Clarence. A search of Clarence's vehicle and apartment produced the 9-millimeter semi-automatic handgun used to kill Lane and a new magazine for the gun that Hardy had purchased that morning.

[13] Hardy was charged with murder and armed robbery. At trial, he testified in his own defense. A jury found him guilty as charged.

[14] At sentencing, Hardy testified that at the time he committed the offenses, he was homeless and living in his car. He further testified that he was remorseful, that he did not intend to kill Lane, and that Lane's death was an accident. He argued that while the absence of intent to kill is not an element of felony murder, it should be considered a mitigating circumstance. The State argued that Hardy lacked remorse because he continued to deny killing Lane, and that he had a lengthy criminal history.

[15] Following the parties' presentation of evidence, the trial court found several aggravating circumstances, including the planning Hardy undertook to commit the offenses; that Hardy had violated terms and conditions of bond in Hamilton County, Indiana; that he had a pending charge in Marion County, Indiana, for pointing a firearm; that he had a pending petition to revoke probation in Lake County, Indiana, for failure to appear; and that he had a lengthy criminal history that included twelve prior convictions. The trial court found no mitigating circumstances. Hardy was sentenced to sixty-five years executed for the felony murder conviction and sixteen years executed for the armed robbery

conviction, with the sentences to run concurrently. His sentence was within the statutory range. *See* Ind. Code §§ 35-50-2-3 (2015) and 35-50-2-5 (2014).[3] Hardy appeals.

## Discussion and Decision

[16] Hardy argues that his sentence is inappropriate in light of the nature of the offenses and his character. We may revise a sentence if it is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Hardy bears the burden of persuading us that his sentence is inappropriate. *Reid v. State,* 876 N.E.2d 1114, 1116 (Ind. 2007).

[17] However, Hardy fails to present a cogent argument regarding the inappropriateness of his sentence. His Rule 7(B) argument focuses only on the trial court's failure to consider as a mitigating factor his contention that he attempted to avoid harming the victim by trying to flee the scene of the crime. Because Hardy's argument regarding the inappropriateness of his sentence is lacking, the issue we will address on appeal is whether the trial court abused its discretion at sentencing when it failed to consider as a mitigating factor Hardy's contention that he made considerable effort to avoid harm to the victim by attempting to flee the scene of the robbery.

---

[3] A person who commits murder shall be imprisoned for a fixed term of between forty-five and sixty-five years, with the advisory sentence being fifty-five years. Ind. Code § 35-50-2-3 (2015).

A person who commits a Level 3 felony shall be imprisoned for a fixed term of between three and sixteen years, with the advisory sentence being nine years. Ind. Code § 35-50-2-5 (2014).

[18] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). A trial court may impose any sentence authorized by statute, and so long as a sentence falls within the statutory range, it may only be reviewed for an abuse of discretion. *Id*. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable and actual deductions to be drawn therefrom. *Id*.

[19] In making a sentencing determination, the trial court may consider whether there are any aggravating or mitigating circumstances to merit a sentence enhancement or reduction. Ind. Code § 35-38-1-7.1(a)-(b) (2015). However, "[i]f the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." *Anglemyer*, 868 N.E.2d at 493 (quoting *Fugate v. State,* 608 N.E.2d 1370, 1374 (Ind. 1993)). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Id*.

[20] At sentencing Hardy offered as mitigating factors that he was remorseful, that he cooperated with police, and that the shooting of the victim was "an accident" not meant "to cause the death of anyone." Tr. p. 399. He asserted that, "while the absence of intent is not a defense to the way this charge is filed[, it] is a mitigator that the court can consider." *Id*. at 406.

Hardy did not argue at sentencing that his attempt to flee the scene of the crime to avoid harming the victim should be considered a mitigating factor. He raised the argument for the first time in his Appellant's Brief. Thus, his argument is waived. "'If the defendant does not advance a factor to be mitigating at sentencing, this Court will presume that the factor is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal.'" *Hollin v. State*, 877 N.E.2d 462, 465 (Ind. 2007) (quoting *Spears v. State*, 735 N.E.2d 1161, 1167 (Ind. 2000)). Regarding the mitigating factors Hardy did present at sentencing, the trial court was well within its discretion when it considered the factors but declined to find them as mitigating. *See Hackett v. State,* 716 N.E.2d 1273, 1277-78 (Ind. 1999) (trial court not obligated to find a circumstance to be mitigating merely because it is advanced by defendant). No abuse of discretion occurred.

## Conclusion

For the reasons stated, we conclude the trial court did not abuse its discretion in sentencing Hardy.

Affirmed.

Mathias, J., and Barnes, J., concur.