## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 30 2019, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shawn Robert Thomas Cowling, *Appellant-Defendant*, | August 30, 2019 |
| | Court of Appeals Case No. 19A-CR-649 |
| v. | Appeal from the Tippecanoe Superior Court |
| State of Indiana, *Appellee-Plaintiff*. | The Honorable Steven P. Meyer, Judge |
| | Trial Court Cause No. 79D02-1804-F1-5 |

**Brown, Judge.**

[1] Shawn Robert Thomas Cowling appeals his sentence for child molesting as a level 1 felony. We affirm.

## Facts and Procedural History

[2] On or about April 15, 2018, Cowling, who was forty-two years of age, knowingly or intentionally performed or submitted to sexual intercourse or other sexual conduct with his daughter K.C., a child of seven years of age.

[3] On April 25, 2018, the State charged him with three counts of child molesting as level 1 felonies, which alleged that he did knowingly or intentionally perform or submit to sexual intercourse or other sexual conduct with K.C., and three counts of child molesting as level 4 felonies, which alleged that he did perform or submit to any fondling or touching with K.C. with intent to arouse or satisfy his sexual desires.

[4] On December 27, 2018, he entered a plea of guilty to one count of child molesting as a level 1 felony, and the court took the matter under advisement. On February 12, 2019, the State filed a sentencing memorandum that included a narrative report which was dated April 20, 2018. The report indicated that, during an interview, K.C. had described three incidents in which: she tried to leave the bathroom in the room of Cowling and K.C.'s mother but he kept the door shut, placed her back in the bathroom, and "put his boy part in her girl part"; he picked her up and took her into the upstairs bathroom of a previous residence in Hoopeston, Illinois, took off her and his clothes, and "put his penis in her girl part and her butt"; and he "one time . . . put his boy part in her girl

part on her bed." Appellant's Appendix Volume II at 55-56. It stated that K.C. disclosed that Cowling "told her not to tell anyone what had happened" and that he showed her "videos of real people on the lap top [sic] computer doing the thing he does to her. She said that sometimes it was adults doing it to little girls." *Id.* at 56. The narrative report also stated that Cowling, in a separate interview, had initially described the reason he was being interviewed as related to an "accidental touching of [K.C.'s] vagina with his hand while playing," denied showing K.C. pornography, and stated that, when she entered from the bathroom and was on top of him on the bed, "she may have fell down on him onto his penis" before admitting that he did place his penis inside of her vagina. *Id.* at 57. The sentencing memorandum also included a supplemental report dated May 16, 2018, of a forensic analyst, which indicated that approximately 500 images were found that fit the definition of child exploitation material, including images of child erotica as well as nude images of children less than the age of eighteen, and that a folder in the recycle bin, which was deleted on April 20, 2018, at 1:51 a.m., contained "what appeared to be 20 favorite[]" links to pornographic websites, "some including terms like . . . 'incest stories[,]' . . . 'your lust teens[,]' . . . [and] 'nice young teens sex'." *Id.* at 62.

[5] The presentence investigation report ("PSI") was filed on February 20, 2019, and stated that Cowling reported that he enlisted in the United States Air Force on August 17, 1997, and retired on August 31, 2015, that his "highest rank was E-7 and his MOS was 2W/71," that he was involved in active combat duty in the Middle East in 2004, and that he had never been listed as AWOL,

incarcerated, or court-martialed. *Id.* at 100. It further stated that Cowling replied, "[m]aybe," when asked if he had any physical and/or emotional difficulties as a result of his military experience. *Id.*

[6] On February 25, 2019, the court held a sentencing hearing at which it admitted the sentencing memorandum. Cowling presented the testimony of Dr. Robin Dianne Kohli, a clinical psychologist. Dr. Kohli testified that she completed an examination of Cowling on October 9, 2018, during which she administered several psychological assessment measures, including "the MCMI III and the Sex Offender Risk Assessments, the SORAG, and the STATIC-2002." Transcript Volume II at 26. She indicated that she picked the "STATIC-2002 because it's a good predictor, a strong predictor of recidivism, and the SORAG also is one of those measures that's also a good predictor of risk." *Id.* at 28. She testified that Cowling came up as low risk to reoffend on the two different sex offender risk assessment measures "primarily due to his no history of acting out sexually in the past" and indicated that the assessment measures were "basically actuarial risk assessments like . . . insurance companies use" and that, "so in this case, due to his lack of previous offenses and the other factors associated with his past, and his current mental health issues, he came up as low risk for reoffense and in the lowest percentage for that to occur." *Id.* at 27. She testified that Cowling scored at a Level 1 based on the STATIC-2002, "which is the lowest risk category" and that his likelihood to reoffend would be 1.8 percent in a five-year period and 1.8 percent in a ten-year period. *Id.* at 28.

When asked for specific recommendations, Dr. Kohli testified that: Cowling "has a misunderstanding about people and relationships"; she thought he lacked empathy and he "could have a hard time seeing things from his daughter's perspective"; and he struggled when asked to consider the perspective of others and "really rationalized his actions," which was apparent in statements he made during the evaluation. *Id.* at 29. She stated:

> Even though he's low risk to reoffend, technically, on these instruments, I think that it would be very important for him to have a better understanding of how to prevent himself from acting in this way that he'd have a relapse prevention plan in place when he came out and that he would have follow–up services also in the community so that he wouldn't reoffend.

*Id.* at 30. During cross-examination, she testified that he said he engaged K.C. in oral, anal, and vaginal sex "over the course of up to ten incidents" and that he was not sure exactly how many incidents had occurred. *Id.* at 32. She explained that "some of the instruments determine based upon how many victims and some of them are how many times they've been arrested" and "[b]ut when you've been arrested one time, that counts as one incident" and answered affirmatively when asked "[s]o you're looking at arrest or convictions – particularly arrests, but it doesn't matter if that arrest included ten or one incident." *Id.* at 32-33. She indicated that, "strangely, if . . . the victim's related to you, . . . it doesn't factor in as much as if it's an unrelated victim, which doesn't make sense to anyone, but it's just how it is." *Id.* at 33-34.

[8]     She testified that Cowling mentioned possessing child pornography and that "[i]t doesn't really ask about child pornography on these risk assessment measures, probably because most of them are using pornography of some sort." *Id.* at 35. She indicated that she diagnosed him with pedophilia and adjustment disorder with depressed mood. When examined by the court, she testified that the pedophilia diagnosis was concerning because "he may have a hard time modifying that interest," answered in the negative when asked if she was aware that police reports filed by the State "indicated that they located approximately 500 images of child exploitation materials on his computer," and stated "[b]ut it wouldn't . . . surprise [her]." *Id.* at 39, 41. Regarding people downloading child pornography, she stated that, "just for the purposes of these evaluations, it would be really hard to determine like how many each person has downloaded over the course of time," the court asked, "but isn't it something you'd want to know," and she answered affirmatively and stated: "It's just not something that necessarily translates to a number of or a risk assessment of reoffending. Now if we were to say, is he very likely to get back into child pornography and viewing child pornography? Yes. The answer would probably be yes." *Id.* at 42. She further explained there is a wide variability of different types of sex offenders, that "in his case . . . he is probably high risk to reengage in child pornography," and that "then it's like is he likely to reoffend with children specifically? And for that he's at low risk technically because he's had one human victim." *Id.* at 43.

[9]    In closing argument, his counsel argued that Cowling, "as the PSI showed, had [] what would be considered a distinguished military career." *Id.* at 47. The court stated it had read through the entire file before discussing several mitigating and aggravating circumstances, accepting his guilty plea, finding that he was guilty of one count of child molesting as a level 1 felony, and sentencing him to forty years, with thirty-five years executed and five years suspended on supervised probation. The court indicated that it had considered the argument about the low risk to reoffend and stated:

> I appreciate the doctor's testimony. But while I appreciate the testimony, I also find that it's not completely persuasive to the Court given, number one, the rationalization that the doctor indicated that [Cowling] engages in; given the diagnosis of pedophilia, which concerns the Court; given the fact that the doctor did also indicate that he's highly likely to reoffend with regard to child pornography, that he's a high risk to reoffend on that; and that testing did indicate that he's attracted to children. So those factors weigh into my consideration about giving the weight to the argument that he is low risk to reoffend. So I wanted to make sure the record was clear on that.
>
> The other thing I wanted to also mention is that – I think it was mentioned in the argument about he's a veteran and that he has military service. While I typically like to give some recognition of that and thank the individuals for their service as a veteran, I have to say, sir, your acts here dishonored that word veteran. You dishonored it in the most vile way, and so the Court does not give a lot of weight to your service given the egregious nature of the acts here.

*Id.* at 68.

On February 27, 2019, the court issued its sentencing order, which indicated that it considered the PSI and found as aggravating factors:

> the victim was in the care, custody and control of [Cowling] (she was his daughter); the molestations occurred up to 10 different times; the serious nature of acts committed upon the child; [Cowling] attempted to avoid detection by telling the child to not tell anyone; deleting evidence from his computer; [Cowling's] expert witness testified that he was highly likely to reoffend regarding child exploitation and/or child pornography; and the impact the offense has had on the victim and her family are more than what would be expected to prove the elements of the crime.

Appellant's Appendix Volume II at 72. **(71)** The court found that the aggravating factors outweighed the mitigating factors, which it found as:

> [Cowling] pled guilty (diminished by the benefits he received from the plea agreement); he has no prior criminal convictions (diminished by prior uncharged acts of molestation and possession of child pornography); and he expressed remorse today (diminished by the fact that he failed to express remorse prior to sentencing hearing and [Cowling's] expert witness testified that he lacks empathy for the victim).

*Id.*

### Discussion

The issue is whether the trial court abused its discretion in sentencing Cowling. We review the sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the

facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

[12]     Cowling argues the trial court committed three sentencing errors and that the "effect of those errors, individually and cumulatively, warrants remand for reconsideration." Appellant's Brief at 14. First, he argues the court failed to recognize his low risk to reoffend as a mitigating circumstance and contends that Dr. Kohli's testimony of the two risk assessment tests constituted "substantial uncontroverted evidence of a statutory mitigator."[1] *Id.* at 7.

---

[1] Cowling cites Ind. Code § 35-38-1-7.1, which provided at the time that "[t]he court may consider the following factors as mitigating circumstances or as favoring suspending the sentence and imposing probation: . . . (2) The crime was the result of circumstances unlikely to recur. . . . (8) The character and attitudes of the

Second, in pointing to the court's comments about his military service during sentencing, he contends that its refusal to give mitigating weight to his service has no basis in the factual record or connection to the nature of his service and argues that there is no reasonable basis to deny a mitigator to sex offenders while granting it to other classes of offenders. Third, in pointing to Dr. Kohli's testimony and the court's identified aggravating circumstance that he was highly likely to reoffend regarding child exploitation and/or child pornography, Cowling contends that the court "cherry-pick[ed] one unsupported statement" to his detriment after having found her testimony not completely persuasive and she testified that there was not a "risk assessment measure for child pornography recidivism yet." *Id.* at 13-14.

[13] The State maintains that the court was not required to give any mitigating weight to Dr. Kohli's testimony or Cowling's military service and that he provides no support for his assertion that the court abused its discretion by relying on those portions of witness testimony which it found persuasive while disregarding those portions it found unpersuasive. It contends Dr. Kohli's testimony and the record do not clearly support her assessment of Cowling's likelihood to reoffend and that, based on her explanation of the psychological assessment measures, "someone could have molested one child thousands of times and still be considered a low risk to reoffend." Appellee's Brief at 10.

---

person indicate that the person is unlikely to commit another crime." (Subsequently amended by Pub. L. No. 5-2019, § 1 (eff. July 1, 2019).

[14]   Determining mitigating circumstances is within the discretion of the trial court. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. The court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and the court is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* "A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature, weight, or significance." *Guzman v. State*, 985 N.E.2d 1125, 1133 (Ind. Ct. App. 2013) (quoting *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002) (internal quotations omitted)). An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. If the court does not find the existence of a mitigating factor after it has been argued by counsel, it is not obligated to explain why it has found that the factor does not exist. *Id.*

[15]   Further, a single aggravating circumstance may be sufficient to enhance a sentence. *See Hackett v. State*, 716 N.E.2d 1273, 1278 (Ind. 1999) (citing *Angleton v. State*, 714 N.E.2d 156, 160 (Ind. 1999)). "Generally, the nature and circumstances of a crime is a proper aggravating circumstance." *Gomillia v. State*, 13 N.E.3d 846, 853 (Ind. 2014) (citing *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001)). When a trial court improperly applies an aggravator but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Hackett*, 716 N.E.2d at 1278 (citing *Shields v. State*, 699 N.E.2d 636, 639 (Ind. 1998)).

[16] Here, the trial court considered Dr. Kohli's testimony, which it found not completely persuasive, and Cowling's military service as provided in the PSI. While Dr. Kohli testified that Cowling was measured as a low risk to reoffend on the two sex offender risk assessment measures, the court also heard her testimony that the result was primarily due to his lack of history of acting out sexually in the past, that he reported he had engaged K.C. in up to ten sexual incidents, some instruments assess based upon the number of victims while others assess based upon the number of times that the perpetrator had been arrested and that it does not matter if the arrest involved a single or multiple incidents, and that "strangely, if . . . the victim's related to you, . . . it doesn't factor in as much as if it's an unrelated victim." Transcript Volume II at 33. With respect to his military service, we observe that service to our country is a commendable act, but military service is not necessarily a mitigating circumstance. *See Harman v. State*, 4 N.E.3d 209, 218 (Ind. Ct. App. 2014) (observing that the State pointed out during the sentencing hearing that the defendant's actions were the actions "of a monster and not of a Marine," and holding that the trial court did not abuse its discretion by not finding the defendant's military service to be a mitigating circumstance), *trans. denied*. To the extent he argues that his character or attitude indicates that he is unlikely to commit another crime, we note that the court found that he expressed remorse as a mitigating factor "diminished by the fact that he failed to express remorse prior to sentencing hearing and [Cowling's] expert witness testified that he lacks empathy for the victim." Appellant's Appendix Volume II at 72. We cannot say that Cowling has established that the mitigating evidence was both

significant and clearly supported by the record. Further, based upon the record and in light of the valid aggravators, we cannot say that the trial court abused its discretion in sentencing Cowling.

[17] For the foregoing reasons, we affirm Cowling's sentence for child molesting as a level 1 felony.

[18] Affirmed.

Altice, J., and Tavitas, J., concur.