ATTORNEY FOR APPELLANT
Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Zachary J. Stock
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 69S04-0801-CR-3

BRIAN TYLER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Ripley Circuit Court, No. 69C01-0603-FA-001
The Honorable Carl H. Taul, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 69A04-0702-CR-120

**March 31, 2009**

**Boehm, Justice.**

We exercise our supervisory power to hold that a party may not introduce testimony via the Protected Person Statute if the same person testifies in open court as to the same matters. We also exercise our authority to revise the defendant's 110-year sentence to sixty-seven and one-half years.

**Facts and Procedural History**

Brian Tyler's girlfriend regularly babysat for a family with three children aged five to eight. Often, she would bring Tyler along. On December 30, 2005, the girlfriend babysat the children along with two other children, aged four and seven. For about four hours that night, the girlfriend left Tyler in charge of the children to go to another job. The next day, with the parents still gone, the children told the girlfriend that Tyler had exposed himself to them.

After the incident was reported, all five children spoke with a social worker at the Mayerson Center in Cincinnati in videotaped interviews in which all reported a series of sexual acts.

Tyler was charged with two counts of class A felony child molesting, two counts of class C felony child molesting, and one count of class D felony vicarious sexual gratification. All five children testified at trial. In addition, videotaped interviews of three of the children were admitted into evidence. A jury found Tyler guilty on all counts and determined that he was a habitual offender. The court entered judgment for the two A felonies and the class D felony, merging the C felonies into the A felonies. The court sentenced Tyler to forty years on each of the two class A felonies, to be served consecutively; three years on the class D felony, concurrent with the class A felonies; and thirty years for being a habitual offender. This resulted in a sentence of 110 years executed time.

Tyler appealed, asserting error under Indiana Rule of Evidence 403 or, alternatively, fundamental error, in the admission of the children's taped interviews. Tyler also contends that his sentence was inappropriate. The Court of Appeals affirmed the trial court in an unpublished opinion. Tyler v. State, No. 69A04-0702-CR-120, slip op. at 2 (Ind. Ct. App. Oct. 31, 2007). We granted transfer.

**I. Protected Person Statute**

The Protected Person Statute (PPS), Ind. Code Ann. § 35-37-4-6 (West Supp. 2008), allows for the admission of otherwise inadmissible hearsay evidence relating to specified crimes whose victims are deemed "protected persons." The statute provides:

(d) A statement or videotape that:

(1) is made by a person who at the time of trial is a protected person;

(2) concerns an act that is a material element of an offense listed in subsection (a) or (b) that was allegedly committed against the person; and

(3) is not otherwise admissible in evidence;

is admissible in evidence in a criminal action for an offense listed in subsection (a) or (b) if the requirements of subsection (e) are met.

(e) A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:

(1) The court finds, in a hearing:

(A) conducted outside the presence of the jury; and

(B) attended by the protected person;

that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

(2) The protected person:

(A) testifies at the trial; or

(B) is found by the court to be unavailable as a witness for [an enumerated reason.]

The PPS applies in this case because child molesting and fondling are specified crimes, id. § 35-37-4-6(a)(1), and children under fourteen years of age are deemed "protected persons." Id. § 35-37-4-6(c)(1).

Similar statutes have been enacted in many states. They are generally described as efforts to spare children the trauma of testifying in open court against an alleged sexual predator. See Miller v. State, 517 N.E.2d 64, 69–70 & n.4 (Ind. 1987) (listing characteristics of, and states with, similar statutes). Balanced against these considerations are concerns for the defendant's right to a fair trial, specifically, the Sixth Amendment right "to be confronted with the witness against him," and the right under article I, section 13 of the Indiana Constitution to meet witnesses "face to face." And, of course, the policies underlying the hearsay rule come into play. Aside from these issues, some have expressed specific concerns regarding children's suggestibility and have also questioned their capacity for accurate perception and memory. See, e.g., Jean Montoya, Something Not So Funny Happened on the Way to Conviction: The Pretrial Interrogation of Child Witnesses, 35 Ariz. L. Rev. 927, 933–34 (1993) (noting that persistent pretrial interrogations can impair the search for truth because children are highly vulnerable to suggestion).

3

The PPS addresses these concerns in two ways. First, the trial court must find any video-taped statements to be reliable before they may be admitted. I.C. § 35-37-4-6(e)(1). Second, the protected person must be made available for cross-examination. Id. § 35-37-4-6(f).

Because the PPS represents a departure from ordinary trial procedure, it should be used only when necessary to further its basic purpose of avoiding further injury to the protected person. We have never addressed a case under the current Rules of Evidence where, as here, the protected person testified at trial as well as by videotape or other statement.[1] There are, of course, some circumstances under which a prior statement of a live witness is admissible under the Rules of Evidence, for example under Evidence Rule 801(d)(1)(A) or (B) because it contains inconsistent statements or rebuts a claim of fabrication. But neither party claims that the testimony in this case is admissible under these provisions. We believe that admitting consistent statements through both prerecorded media and also by live testimony presents two problems aside from confrontation clause or hearsay issues. First, admitting both a child's live testimony and consistent videotaped statements is cumulative evidence, and can be unfairly prejudicial. See, e.g., Modesitt v. State, 578 N.E.2d 649, 650–52 (Ind. 1991) (finding that testimony by several witnesses repeating victim's prior statements was reversible error due to "drumbeat" repetition). Second, if a child or other protected person is sufficiently mature and reliable to testify in open court without serious emotional distress,[2] resort to the PPS is unnecessary. And if the person testifies live, admitting the additional earlier statement does not serve the statutory purpose of protecting the child from the burden of testifying.

In light of these considerations, we conclude that this Court should exercise its supervisory powers to elaborate on the permissible use of statements under the PPS.[3] We hold that if the statements are consistent and both are otherwise admissible, testimony of a protected person

---

[1] In Carter v. State, 754 N.E.2d 877, 878–79 (Ind. 2001), the victim testified at trial and the State introduced her prior videotaped statements under the PPS. The defendant argued that admission of the victim's prior statements was improper. 754 N.E.2d at 883. We found the allegation of error was not preserved and did not address the issue. Id.

[2] See I.C. § 35-37-4-6(e)(2)(B)(i).

[3] Supervisory powers are used "(1) to implement a remedy for violation of recognized rights; (2) to preserve judicial integrity by insuring that a criminal conviction rests on appropriate considerations validly before the jury; and (3) as a remedy designed to deter illegal conduct." 32 Am. Jur. 2d Federal Courts § 13 (2007).

may be presented in open court or by prerecorded statement through the PPS, but not both except as authorized under the Rules of Evidence. If the person is able to testify live without serious emotional distress such that the protected person cannot reasonably communicate, that is clearly preferable.

Rules implemented by use of supervisory powers are not applicable to proceedings conducted prior to publication. <u>Pierce v. State</u>, 677 N.E.2d 39, 46 (Ind. 1997). We recognize that the statute on its face provides that prior videotaped testimony may be admitted even if the protected person testifies at the trial. Specifically, the statute provides that a protected person's statement or videotape is admissible if that person testifies at trial as long as the court finds that the statement provides "sufficient indications of reliability" and the defendant is given notice. I.C. § 35-37-4-6(e). At the time of this trial, the opinions of this Court predating the Rules of Evidence had permitted admission of videotaped testimony under the PPS even if the witness also testified at trial. <u>E.g.</u>, <u>Wyrick v. State</u>, 533 N.E.2d 118, 119–20 (Ind. 1989); <u>cf.</u> <u>Traver v. State</u>, 568 N.E.2d 1009, 1011–12 (Ind. 1991). After the Rules were promulgated, we explained in <u>Pierce</u> that "Ind. Evidence Rule 802 prohibits admission of hearsay 'except as provided by law or by these rules.' The [PPS] is a provision 'by law,' and does not conflict with Rule 802." 677 N.E.2d at 43 n.6. This Court thus explicitly accepted the PPS as a part of Indiana evidence law, though not in the Rules. Tyler contends that the admission of evidence under the statute must still be subject to the overall balancing of prejudice and probative value required by Evidence Rule 403. We agree that evidence admissible under this statute, like any other generally admissible evidence, is subject to that test. But we do not agree that the court committed reversible error by admitting the taped statements. Although cumulative and therefore of minimal probative value, the prejudicial effect of admission of videotaped statements by three of the children was not significant in the face of the consistent live testimony of all five children.[4]

---

[4] Trial courts are given broad discretion in balancing the prejudice and probative value of evidence under Evidence Rule 403. That decision is reviewed for an abuse of discretion, <u>Baer v. State</u>, 866 N.E.2d 752, 763 (Ind. 2007), but interpretation of the Rules of Evidence and statutes present issues of law that are reviewed de novo.

## II. Sentence Revision

Tyler next claims that his sentence is inappropriate. Indiana's sentencing scheme as it applies in this case provides for an "advisory" term of thirty years for commitment of a class A felony, with not more than twenty years added for aggravating circumstances. Ind. Code Ann. § 35-50-2-4 (West Supp. 2008). The advisory term for a class D felony is one and one-half years with not more than another one and one-half years for aggravating circumstances. Id. § 35-50-2-7. The trial court sentenced Tyler to forty years for each of two counts of class A felony child molesting. For class D felony vicarious sexual gratification, Tyler was sentenced to three years. Tyler was also sentenced to an additional thirty years as a habitual offender, the maximum allowed habitual offender sentence. Id. § 35-50-2-8(h). He contends that the trial court erred when it sentenced him to this executed term of 110 years in prison.[5]

When a trial court imposes a sentence, it "must enter a statement including reasonably detailed reasons or circumstances for imposing [that] particular sentence." Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007). The court on appeal reviews those reasons and the omission of any reasons arguably supported by the record for abuse of discretion. Id. But Tyler alleges no error in this regard. Rather he asks the Court to exercise its independent constitutional authority to review and revise a criminal sentence. Ind. Const. art. VII, §§ 4, 6. This power is codified in Indiana Appellate Rule 7(B): "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This review is at the discretion of the appellate courts.

We conclude that the fact that Tyler committed his offenses against multiple victims justifies the imposition of consecutive sentences for the two class A felony convictions.[6] For the same reason, we agree with the trial court that the sentence for the class D felony conviction (where the information covered offenses against multiple victims) should be enhanced and run

---

[5] In the Court of Appeals, Tyler also claimed that the trial court erred by running enhanced sentences consecutively. The Court of Appeals correctly held that we have since rejected a similar claim in Robertson v. State, 871 N.E.2d 280, 285–86 (Ind. 2007).

[6] Child molesting is a "crime of violence" as defined by Indiana Code section 35-50-1-2(a). Tyler therefore is eligible for consecutive sentences not limited by the "episode" statute. I.C. § 35-50-1-2(c).

consecutively to the other two sentences. Tyler's underlying convictions justifying the habitual offender enhancement were class D felony battery on a department of corrections employee and class D felony battery resulting in bodily injury, also committed while Tyler was incarcerated. Both of these offenses were certainly serious, but neither involved children or a sex offense. For this reason, we attach the habitual offender enhancement to the class D felony conviction rather than either of the class A child molesting convictions. The effect of this change is that his habitual offender enhancement is a maximum of four and one-half years rather than thirty years. See I.C. § 35-50-2-8(h) (a habitual offender enhancement is no more "than three (3) times the advisory sentence for the underlying offense").

Finally, we review the trial court's decision to enhance the sentences for the two class A felony convictions. First, there is no evidence that Tyler used physical force on the children, and the trial court found as a mitigating circumstance that none of the children was physically injured by the incident. Second, though Tyler had met the children on previous occasions, he was not regularly in a position of control over them. Tyler was babysitting his victims at the time of the offenses, but the record does not suggest that he actively sought opportunities to supervise the children, and there is no evidence of his having sought to establish a prior position of trust or confidence. Third, Tyler committed the instant offenses at the age of twenty-two. He had no previous convictions for child molesting or any other sex offense.

There are also some mitigating circumstances here. The record establishes (and the trial court recognized) that Tyler has been deeply emotionally troubled from a very young age, having engaged in highly abnormal and antisocial behavior at seven years of age. This resulted in a series of institutional placements throughout his teenage years, including the Muncie Youth Opportunity Center, Pleasant Run Treatment Center, Behavioral Healthcare in Columbus, Larue Carter Memorial Hospital, Madison State Hospital, Gibault School for Boys, Jefferson Hospital, St. Vincent Stress Center, and Wernle Residential Youth Center. Tyler was a victim of physical and verbal abuse, and was diagnosed as suicidal at age nine or ten. In a 2000 evaluation, conducted when Tyler was sixteen, a brain tumor was reported that affected his ability to control his behavior. Lastly, Tyler has taken at least five IQ tests with scores ranging from 61 to 72.

7

We conclude that enhancement of the consecutive sentences imposed for Tyler's class A child molesting convictions above the advisory level is not warranted. We revise Tyler's sentence to the advisory sentence of thirty years for each of the two class A felony child molesting convictions and a fully enhanced sentence of three years for the class D felony vicarious sexual gratification conviction to be served consecutively, and attach a habitual offender enhancement of four and one-half years to the class D felony conviction. This results in total executed time of sixty-seven and one-half years.

### Conclusion

The trial court did not abuse its discretion when it admitted videotaped interviews with three of the children after the children had testified at trial. However, we remand the issue of Tyler's sentence to the trial court with instructions to issue an amended sentencing order in accordance with this opinion, without a hearing.

Shepard, C.J., and Rucker, J., concur.

Sullivan, J., concurs in result as to Part I and concurs as to Part II with separate opinion.

Dickson, J., concurs and dissents with separate opinion.

**Sullivan, Justice, concurring in result as to Part I and concurring as to Part II.**

Sometimes having a new approach to the admissibility of evidence improves the administration of justice but I respectfully suggest that the status quo is superior to that adopted by the Court here.

As the Court acknowledges, the Protected Person Statute permits prior videotaped testimony to be admitted at trial (so long as it has been vetted in the statutorily required pre-trial hearing) even if the protected person testifies at the trial. I.C. § 35-37-4-6(e)(2)(A). While the Court's new per se rule prohibits the State from ever using the Statute in this way, I believe that there are situations where the jury benefits from the additional evidence available in a properly admitted videotaped statement or interview even if the protected person also testifies at trial (or vice versa). I agree with the Court that the Protected Person Statute should not provide an opportunity for a party to do a general "end run" around the rules of evidence by exposing the jury to evidence that would otherwise be considered prejudicial or needlessly cumulative to a point where the presentation of it substantially outweighs its probative value. But I believe that the proper way to deal with this problem is not by promulgating a new per se rule but by employing the status quo's test for admissibility provided by Ind. Evidence Rule 403.[1]

In point of fact, Tyler does not ask for the new rule adopted by the Court here. Instead, he argues that while the videotaped statements were admissible under the Protected Person Statute, they were inadmissible because of Evid. R. 403. I agree with the Court that the effect of the redundant testimony was essentially to demonstrate to the jury that none of the children's stories had changed between the time of the interviews and the time of trial. As such, I believe that the probative value of the evidence was at least equal in weight to its adverse effect on Tyler and in no event was the probative value substantially outweighed.

I concur in the Court's resolution of Tyler's sentencing claim.

---

[1] Evidence R. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

**Dickson, Justice, concurring and dissenting.**

As to Part I of the Court's opinion, I agree with its holding regarding the permissible use of statements under the Protected Person Statute. As the majority notes, an accused person's presumption of innocence and right to fair trial can be substantially affected by the tension between the commonly presumed candor of young children and the serious questions of their capacity for accurate perception, memory, and resilience to suggestibility.[1] In the exercise of this Court's supervisory powers, we must carefully consider and balance the countervailing goals of convicting the guilty but assuring fair trials to protect the innocent.

Statutory enactments and court decisions have accommodated prosecutorial interests in presenting as evidence the narrative recollections of young children who may be traumatized by testimony in open court—hearsay evidence that would otherwise be inadmissible under traditional principles. But the equally inviolate obligation to assure a fair trial for persons presumed innocent compels cautious application of this exception, especially when permitting the prosecution not only to present such hearsay evidence, but also to present these same children as live witnesses, thereby providing potentially repetitive and cumulative testimony—a practice that is generally condemned. *See, e.g.*, Cooper v. State, 854 N.E.2d 831 (Ind. 2006) (finding drumbeat repetition of prosecutor's closing remarks of a sentencing phase to be fundamental error); Appleton v. State, 740 N.E.2d 122 (Ind. 2001); Modesitt v. State, 578 N.E.2d 649 (Ind. 1991) (finding that drumbeat repetition of victim's prior statements by other witnesses before her testimony and cross-examination was reversible error due to the repetition). *But see* Willis v. State, 776 N.E.2d 965 (Ind. Ct. App. 2002) (finding that even if videotaped evidence of a child's testimony was drumbeat repetition, it was not fundamental error), *trans. not sought*.

In most circumstances, fairness would seem to require that the State choose either to present a child's testimony in open court or, if the child is deemed subject to emotional harm

---

[1] *See, e.g.*, Jean Montoya, Something Not So Funny Happened on the Way to Conviction: The Pretrial Interrogation of Child Witnesses, 35 Ariz. L. Rev. 927, 948 (1993) (noting that videotaping of children's testimony does not promote the integrity of the fact-finding process); Goodman & Reed, Age Difference in Eyewitness Testimony, 10 Law & Hum. Behav. 317 (1986); Cohen & Harnick, The Susceptibility of Child Witnesses to Suggestion, 4 Law & Hum. Behav. 201 (1980). *But see* Goldman & Helgeson, Child Sexual Assault: Children's Memory and the Law, 40 U. Miami L. Rev. 181 (1985).

from such public testimony, to present the child's version through the Protected Person Statute—but not both.  If a child is sufficiently mature to testify in open court, resort to the Protected Person Statute exception is unnecessary and unfair.  I therefore agree with the Court's holding that "if the statements are consistent and both are otherwise admissible, testimony of a protected person may be presented in open court or by prerecorded statement through the [Protected Person Statute], but not both."  Slip Op. at 4-5.

As to Part II, however, I dissent.  Adhering to "due consideration of the trial court's decision," as required by Indiana Appellate Rule 7(B), I find that Judge Taul's evaluation and determination of the appropriate sentence for this defendant and these convictions does not warrant appellate intrusion.