# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 03 2019, 5:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

### ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

### ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ramiro Aguirre,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 3, 2019<br><br>Court of Appeals Cause No. 18A-CR-2456<br><br>Appeal from the Hamilton Superior Court<br><br>The Honorable Steven R. Nation, Judge<br><br>Trial Court No. 29D01-1804-F1-2906 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Ramiro Aguirre (Aguirre), appeals his conviction and sentence for ten Counts of child molesting, Level 1 felonies, Ind. Code § 35-42-4-3(a)(1).

We affirm in part, reverse in part, and remand with instructions.

# ISSUES

Aguirre presents four issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion by admitting certain evidence;

(2) Whether the State presented sufficient evidence beyond a reasonable doubt to sustain some of his convictions;

(3) Whether the trial court abused its discretion at sentencing; and

(4) Whether Aguirre's sentence is inappropriate in light of the nature of the offenses and his character.

# FACTS AND PROCEDURAL HISTORY

In 2016, seven-year-old A.G. lived with her mother (Mother), her two brothers, and her sister in Noblesville, Indiana. In November 2016, Mother married Aguirre, and Aguirre moved into A.G.'s home. Mother's children, including A.G., called Aguirre "[p]oppy" or "[d]ad." (Transcript Vol. II, p. 230). Mother

was a lab technician and worked two jobs. Aguirre worked full-time during the evenings at Wal-Mart.

[5] Between November 2016 and April 2018, when A.G. was seven or eight years old, Aguirre committed multiple acts of molestation upon A.G. during his time alone with her. Specifically, Aguirre put his penis on A.G.'s vagina. He also put his penis inside A.G.'s mouth and touched A.G.'s vagina with his hands. A.G. indicated that the molestation events that occurred in three rooms, happened "a lot." (Tr. Vol. III, p. 36). Aguirre instructed A.G. not to disclose his acts to anyone.

[6] On April 6, 2018, Mother drove Aguirre to the airport. Aguirre was flying to Guatemala for medical treatment. On April 18, 2018, and while Aguirre was still in Guatemala, A.G.'s school guidance counselor (Counselor) received a report from a concerned parent regarding something A.G. had told her daughter on the school bus. After talking with A.G. about the report, the Counselor contacted the Department of Child Services (DCS) to report a possible case of child abuse. The school also called A.G.'s mother who left work to pick up A.G. After picking up A.G., Mother took A.G. to the child advocacy center in Hamilton County for a forensic interview. A sexual assault kit was thereafter performed. A.G.'s results were normal since they showed no signs of trauma.

On April 23, 2018, after Aguirre had returned from his Guatemala trip, the State filed an Information, charging Aguirre with Counts I-X, child molesting, Level 1 felonies, and Counts XI-XII, child molesting, Level 4 felonies. On July 11, 2018, a jury trial was conducted, and Aguirre was found guilty as charged. Due to double jeopardy concerns, the trial court declined to enter judgment of convictions for the Level 4 felony child molesting convictions.

On September 13, 2018, the trial court conducted a sentencing hearing. At the close of the evidence, the trial court sentenced Aguirre to forty years on each Count to be served in the Department of Correction (DOC). Aguirre's sentence is to be executed as follows: concurrent terms on Counts I through IV, but consecutive to Counts V through X; concurrent terms for Counts V through VIII, but consecutive to Counts I through X; Counts IX and X, are to run consecutive to each other, and consecutive to Counts I through VIII. Thus, the trial court imposed four consecutive forty-year sentences for an aggregate sentence of 160 years.

Aguirre now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

I. *Admission of A.G.'s Video Forensic Interview*

Aguirre argues that the trial court abused its discretion by admitting A.G.'s video forensic interview as a prior consistent statement pursuant to Indiana Rule of Evidence 801(d)(1). Trial courts have broad discretion to rule on the

admissibility of evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). On appellate review, we review the trial court's ruling "'for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Id*. (quoting *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013)). The trial court's broad discretion extends to situations involving the admissibility of purported hearsay. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014).

[11] "Hearsay is an out-of-court statement offered for 'the truth of the matter asserted,' and it is generally not admissible as evidence." *Id*. at 565 (quoting Ind. Evidence Rule 802). "'Whether a statement is hearsay . . . will most often hinge on the purpose for which it is offered.'" *Id*. (quoting *United States v. Linwood*, 142 F.3d 418, 425 (7th Cir. 1998)).

[12] Indiana Evidence Rule 801(d)(1) provides:

> (d) . . . a statement is not hearsay if:
>
> (1) *A Declarant-Witness's Prior Statement*. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
> (A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition;
> (B) is consistent with the declarant's testimony, and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

(C) is an identification of a person shortly after perceiving the person.

[13] Cases that have applied Indiana Rule 801(d)(1), governing the substantive use of prior consistent statements by a witness and whether there has been an express or implied charge of recent fabrication or improper influence or motive, have made it clear that there is a difference between merely challenging a witness's credibility versus making an express or implied charge of fabricated testimony or improper influence or motive. *Corbally v. State*, 5 N.E.3d 463, 469 (Ind. Ct. App. 2014). Considering *Corbally*, we must therefore determine if there was an express or implied charge of fabricated testimony or improper influence or motive.

[14] At the end of A.G.'s direct examination, the State asked, "did anyone tell you what to say today?" (Tr. Vol. III, p. 43). A.G. responded, "I don't remember." (Tr. Vol. III, p. 43). During A.G.'s cross-examination, the following exchange occurred:

> Q. Okay. And did you talk to anybody about what you were going to say today?
> A. Uh, you know what you mean? What you mean?
> Q. Yeah, have you talked to anybody about what to say today before you came into the courtroom?
> A. No.
> Q. You didn't know what you were going to say? You didn't know what questions people were going to ask you?
> A. I know what I was going to say to Miss Jessica [(the deputy prosecutor)].

Q. Miss Jessica, okay.

A. Yes.

Q. So[,] she kind of helped you with that?

A. Yeah, we practiced last time in the courtroom.

Q. Oh, okay.

A. And we practiced sometime in her room, in her office.

* * *

Q. And you understand that you need to tell the truth, right?

A. Yes.

Q. Okay. And have you been doing that?

A. Yes.

Q. Okay. And is a lot of the things that you're saying is because, that you know what to say is because you had, you were in Ms. Paxton's office?

A. I don't know what Paxton office means.

Q. In [Miss] Jessica's office.

A. Oh. I don't know.

Q. Okay. Is it possible?

A. I don't know what you mean by that.

Q. Oh, okay. Is what you're saying today, okay, is that things that you had, you spoke with or talked with Jessica about in her office?

A. Yes.

Q. Okay. And so you remember what to say because you recently said that with Miss Jessica, right?

A. Yes.

* * *

Q. Okay, thank you. Just one last question, A.G.

A. Okay.

Q. And then I'm done, all right?

A. Okay.

Q. You said that you talked to Jessica once in her office and once in this courtroom?

A. I talked to her last time, two times in her office last time.

Q. Okay. And when was the last time you spoke with her?

A. Last time when I spoke?

Q. Yeah.

A. Talking about [Aguirre] touched [sic] my private body?

Q. Yes.

A. Oh, I started speaking because it wasn't good for me, because I could have been sick or get hurt.

Q. Okay. So did you talk to Miss Jessica in a courtroom like this?

A. No, but in her office. But --

Q. Go ahead.

A. In her office.

Q. In her office, okay. Was anybody else with you?

A. Andre ([deputy prosecutor)].

Q. Who's Andre?

A. He's right there.

Q. Oh, right there. Oh, he was with you. Oh, okay.

A. And Hailey ([A.G.'s private counsel]) was in there with me also.

Q. Hailey was or was not?

A. Yes.

Q. She was with you. So it was you Hailey, Andre, and Jessica?

A. Yes, and Jessica let me grab a beanie-boo that I could play with, but I had to talk also.

Q. And did you go over that picture with her? The picture that I showed you with the drawing?

A. Oh, yeah, she showed me it. And she showed me the picture of the girl private body, but she wasn't able to show me the boy private because it wasn't made yet.

(Tr. Vol. III, pp. 54-55, 62-63, 68-70).

[15]     After A.G. testified, the State called Courtney Bachus (Bachus), the forensic interviewer who questioned A.G, to testify. During the Bachus' direct

examination, the State moved to admit A.G.'s video interview as a prior consistent statement, pursuant to Indiana Evidence Rule 801(d)(1)(B), arguing that Aguirre had "opened the door" when his questions to "A.G. seemed to suggest that her meeting with" the State before trial, implied that it had coached A.G.'s testimony. (Tr. Vol. III, p. 89). The parties engaged in a sidebar, and at the end of the parties' arguments, the trial court allowed the State to publish A.G.'s video forensic interview to the jury.

[16] On appeal, Aguirre argues that he "objected on multiple grounds, including that his cross-examination [of A.G.] did not open the door to her forensic interview" to come in "as a prior consistent statement, and even if he did, the State should [have] rehabilitated A.G. by reading certain prior consistent statements rather than playing the entire video statement." (Appellant's Br. p. 16). He continues, "[E]ven though [he] implied that the meetings with the prosecutors influenced [A.G.'s] testimony by helping her []remember[] what to say, he never implied that such meetings were improper to have with a child." (Appellant's Bp. P. 16).

[17] At Aguirre's jury trial, the State argued that Aguirre's counsel's extensive questioning of A.G. gave the jury the impression that it had improperly influenced A.G.'s testimony. Following the parties' arguments, the trial court concluded in its sound discretion that Aguirre's line of question crossed the line from impeaching for credibility into the realm of implicitly charging A.G. with fabricating her testimony. Our reading of the record supports the State's

contention, and while Aguirre maintains that was not his trial counsel's intention, that is irrelevant. "'The fact that . . . counsel may not have intended to imply that [the witness's] story was fabricated . . . is irrelevant if that inference fairly arises from the line of questioning he pursued.'" *See Horan v. State*, 682 N.E.2d 502, 511-12 (Ind. 1997) (quoting *U.S. v. Baron*, 602 F.2d 1248, 1253 (7th Cir. 1979). *See also Brim v. State*, 624 N.E.2d 27, 33 (Ind. Ct. App. 1993) (victim's prior statement to police identifying Brim was admissible to rebut accusation that the identification was not the result of her own independent knowledge, but instead was the product of suggestions made by her mother and others). Thus, we hold that the trial court properly admitted A.G.'s video interview to rebut Aguirre's allegation that A.G.'s testimony was the result of a recent improper influence by the State.

[18] Even assuming the trial court erred by admitting A.G.'s video forensic interview in this case, we find that the admission was harmless. *See Pavey v. State*, 764 N.E.2d 692, 703 (Ind. Ct. App. 2002) (holding that the erroneous admission of evidence may be harmless if it is merely cumulative of other evidence in the record), *trans. denied*. Here, the videotape was admitted into evidence after A.G. had testified. A comparison of the video interview with A.G.'s trial testimony reveals that the video interview did not supply any information that the jury had not already heard when A.G. testified. Although cumulative and therefore of minimal probative value, the prejudicial effect of admitting A.G.'s videotaped interview was not significant in the face of her live

testimony which was sufficient to justify Aguirre's convictions. Accordingly, we hold that any error in the trial court's admission of A.G.'s video forensic interview was harmless.

## II. *Sufficiency of the Evidence*

[19] On appeal, Aguirre argues that the State failed to prove beyond a reasonable doubt, his convictions for Counts VI through VIII, and Count X.

[20] When reviewing a claim of insufficient evidence, it is well-established that our court does not reweigh evidence or assess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). Instead, we consider all the evidence, and any reasonable inferences that may be drawn therefrom, in a light most favorable to the verdict. *Id*. We will uphold the conviction "'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id*. (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

[21] Indiana Code section 35-42-4-3 (a) provides, in pertinent part, that

> A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct (as defined in [I.C.§] 35-31.5-2-221.5) commits child molesting, a Level 3 felony. However, the offense is a Level 1 felony if:

(1) it is committed by a person at least twenty-one (21) years of age[.]

[22] Indiana code section 35-31.5-2-221.5 defines "other sexual conduct as an act involving a sex organ of one person and the mouth or anus of another person; or the penetration of the sex organ or anus of a person by an object. Indiana case law has established that the female sex organ includes the external genitalia and that the slightest penetration of the female sex organ constitutes child molesting. *See, e.g., Short v. State*, 564 N.E.2d 553, 559 (Ind. Ct. App. 1991) (concluding that penetration of the female sex organ includes penetration of external genitalia); *Stetler v. State*, 972 N.E.2d 404, 407-08 (Ind. Ct. App. 2012) (concluding that touching clitoral hood with finger supported jury's finding that Stetler penetrated the victim's sex organ), *trans. denied.*

## A. *Counts VI through VIII*

[23] For Counts VI through VIII, the State alleged that

> between November 1, 2016[,] and April 8, 2018, [] Aguirre, a person of at least twenty-one (21) years of age, did perform other sexual conduct as defined in Indiana Code [s]ection 35-31.5-2-221.5 with A.G., a child under the age of fourteen (14) years, to-wit: six (6) to eight (8) years old, specifically an act that involved the penis of [] Aguirre and the genitalia of A.G.

(Appellant's App. Vol. II, p. 19). In all three Counts, the State alleged that the offenses occurred "at a time separate." (Appellant's App. Vol. II, p. 19).

[24]    Aguirre argues that "A.G.'s repeated claims that [he] touched her with his private body is not sufficient evidence of sexual intercourse." (Appellant's Br. p. 14). He continues, "[b]ecause A.G. only described one instance in which [he] put his private body in her private body, he should only be convicted of one [C]ount of child molesting." (Appellant's Br. p. 14). We disagree.

[25]    The record shows that between November 2016 and April 2018, when A.G. was seven or eight-years old, Aguirre committed multiple acts of molestation upon A.G. during his time alone with her. The molestation occurred in A.G.'s room, Mother's room, and the living room. At trial, A.G. anatomically identified the female and male genitalia, and she referred to both as "private body." (Tr. Vol. III, p. 30). Although A.G. made a single allegation that Aguirre "touched [his] private body" and then he "put his private body in her private body," A.G. also recalled other sexual conduct as defined by Indiana Code section 35-31.5-2-221.5, committed by Aguirre. (Tr. Vol. III, p. 34). A.G. stated that Aguirre "made his private body go" into her "mouth" and that Aguirre's "private body" tasted like "[p]ee." (Tr. Vol. III, p. 32). A.G. further stated that Aguirre "licked" her "private body" with his mouth more than "two times." (Tr. Vol. III, p. 42). Moreover, A.G. stated that the molestation events that occurred in the three rooms, happened "a lot." (Tr. Vol. III, p. 36).

[26]    In light of the above, we conclude that the State presented sufficient evidence beyond a reasonable doubt to support Aguirre's Level 1 felony child molesting convictions in Counts VI through VIII.

## B. *Count X*

[27]    As for Count X, a Level 1 felony child molesting offense, the State charged Aguirre as follows:

> between November 1, 2016[,] and April 8, 2018[,] [] Aguirre, a person of at least twenty-one (21) years of age, did perform other sexual conduct as defined in Indiana Code [s]ection 35-31.5-2-221.5 with A.G., a child under the age of fourteen (14) years, to-wit: six (6) to eight (8) years old, specifically an act that involved the fingers or hand of [] Aguirre and the genitalia of A.G.

(Appellant's App. Vol. II, p. 19). Relying on *Adcock v. State*, 22 N.E.3d 720, 728-29 (Ind. Ct. App. 2014), Aguirre argues that while A.G. testified that he touched or massaged her vagina several times with his hand, there was no evidence of "digital penetration." (Appellant's Br. p. 14). Aguirre adds

> even if it could be, A.G. circled the entire female genitalia as her "private body." [] The [State] never asked A.G. what part of her private body did Aguirre touch. Thus, A.G.'s testimony is not substantial evidence of probative value from which to infer beyond a reasonable doubt that Aguirre penetrated her genitalia to support a Level 1 felony conviction.

(Appellant's Br. p. 15).

[28]    In *Adcock*, a twenty-year-old witness testified regarding earlier molestations and indicated that the abuse escalated to the defendant rubbing his penis against her "private area, my vagina"; "[victim] had the capability of describing such

penetration by Adcock's penis if it had occurred, but she did not" and there was no medical or physical evidence of penetration. *Adcock*, 22 N.E.3d at 728-29.

[29] We find the present case sufficiently distinct from *Adcock*. Unlike the victim in *Adcock* who was twenty-one years old when she testified, A.G. was nine years old during Aguirre's trial. A.G.'s limited ability to understand and differentiate between various areas of her genitals is understandable given her young age. Moreover, we have held that a conviction for child molesting will be sustained when it is apparent from the circumstances and the victim's limited vocabulary that the victim described an act which involved penetration of the sex organ. *See Short v. State*, 564 N.E.2d 553, 558 (Ind. Ct. App. 1991) (holding that it was reasonable for the trier of fact to infer from child's testimony that defendant touched her "butt" with his "front butt"—when considered in the context of the entirety of the evidence and the child's limited vocabulary regarding sex organs and sexual matters—that the defendant had touched the child's genitalia with his penis, and noting that "[a] conviction for child molesting/sexual intercourse will be sustained when it is apparent from the circumstances and the victim's limited sexual vocabulary that the victim described an act of sexual intercourse"). Also, we note that "[A] detailed anatomical description of penetration is unnecessary." *Smith v. State*, 779 N.E.2d 111, 115 (Ind. Ct. App. 2002), *trans. denied*.

[30] With her limited vocabulary, A.G. provided a detailed testimony pertaining to the allegations in Count X—*i.e.*, Aguirre used his fingers or hand to penetrate

her genitalia. A.G. clearly unequivocally testified that while she was in Mother's room, Aguirre "touched her private body" with "[h]is hands" and she described Aguirre's touching like a "massage." (Tr. Vol. III, p. 33). A.G. even demonstrated the massage in open court. A.G. added that while on the couch in the living room, Aguirre also touched her "private body with his hands." (Tr. Vol. III, p. 36). A.G. testified that while Aguirre was touching her "private body" with his hand, he would ask her, "does this feel good, or [do] you want it harder." (Tr. Vol. III, p. 35). Based on A.G.'s testimony, we hold that the jury had sufficient evidence beyond a reasonable doubt from which it could conclude that Aguirre penetrated A.G.'s sex organ with an object—that is, his hand or finger.

### III. *Abuse of Sentencing Discretion*

[31] Aguirre argues that the trial court abused its discretion by failing to consider his failing health as a mitigating factor at his sentencing hearing. Additionally, he contends that the trial court abused its discretion in finding him at a high risk to reoffend.

[32] Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotations and citation

omitted).  A trial court may abuse its discretion by failing to enter a sentencing statement, entering findings of aggravating and mitigating factors unsupported by the record, omitting factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law.  *Id.* at 490-91.  "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record."  *Id.* at 491.

[33]  Additionally, a trial court is under no obligation "to accept a defendant's claim as to what constitutes a mitigating circumstance."  *Weedman v. State*, 21 N.E.3d 873, 893 (Ind. Ct. App. 2014), *trans. denied*.  In fact, "[w]here the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist."  *Phelps v. State*, 969 N.E.2d 1009, 1019 (Ind. Ct. App. 2012), *trans. denied*.  "A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record."  *Weedman*, 21 N.E.3d at 893.  Ultimately, if we find that the trial court has abused its sentencing discretion, our court will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record."  *Anglemyer*, 868 N.E.2d at 491.

[34] At his sentencing hearing, Aguirre presented evidence that in October 2017, doctors in Guatemala diagnosed him with a "lesion on the right side of his brain." (Tr. Vol. III, p. 227). Aguirre indicated that he had planned to go back to Guatemala for further treatment which was scheduled for September 2018. Aguirre's sister stated that since Aguirre was diagnosed with a lesion in his brain, his health has deteriorated with each passing day. Aguirre's mother added that Aguirre suffered from "migraines, shaking in hands, sleep apnea, high blood pressure, and lack of oxygen to his brain." (Tr. Vol. III, p. 213). Aguirre's counsel also indicated that Aguirre could not receive adequate treatment for all his health conditions in jail, and that the county jail could not permit him to sleep with his "CPAP." (Appellant's Br. p. 25, Tr. Vol. III, p. 227). Aguirre contends that "[d]espite the medical records, his family's assertion, [] the trial court's knowledge of [his] medication issues [], and his attorney's argument, the trial court did not address [his] health in [its] sentencing decision." (Appellant's Br. p. 25).

[35] Notwithstanding Aguirre's claims to his poor health, the pre-sentence investigation (PSI) reveals that Aguirre's medical history could not be verified, and that the only medication he reported taking was a blood pressure medication. Since there was no evidence in the record establishing that Aguirre's multiple health problems should be a factor in determining an appropriate period of incarceration, or that his medical conditions would be untreatable during incarceration, or would render incarceration a hardship, we

conclude that the trial court did not abuse its discretion in declining to consider Aguirre's health to be a mitigating circumstance.

[36] Aguirre further contends that the trial court abused its discretion by improperly considering the probation department's risk assessment that he was at a high risk to reoffend. The PSI stated that Aguirre "was found to be a low risk to reoffend. However, based on the policy of Hamilton County Department of Probation Services regarding sex offenses, [Aguirre's] risk level was overridden to high." (Appellant's App. Conf. Vol. II, p. 235). In the sentencing order, the trial court identified as an aggravating circumstance, among others, that Aguirre's expressions of joy and pleasure during the testimony of A.G. indicated that he was at a high risk to reoffend.

[37] As noted, the trial court allowed A.G.'s video forensic interview to be played for the jury during Aguirre's trial. At sentencing, the trial court stated

> there was testimony concerning the video recording of the child during these sexual acts to her. The [c]ourt is concerned that in observations from this bench during the trial that [Aguirre's] expressions during the testimony of the little girl showed joy and pleasure. So the [c]ourt deems that he would have a high risk of doing this again.

(Tr. Vol. III, p. 236). The trial court was in the best position to judge Aguirre's demeanor at trial, and its reasoning and finding is supported by the record. Even if we conclude that the trial court improperly considered Aguirre's

demeanor and associated it with his ability to reoffend, this was unduly one of the aggravating factors identified by the trial court.

[38] "When a trial court improperly applies an aggravator, but other valid aggravating circumstances exist, a sentence enhancement may still be upheld." *Hackett v. State*, 716 N.E.2d 1273, 1278 (Ind. 1999). The question is whether we are confident the trial court would have imposed the same sentence even if it had not found the improper aggravator. *Id*. In the instant case, the trial court found that Aguirre held a position of trust, which he abused when he molested A.G. The trial court also considered A.G.'s tender age when she was molested, and that Aguirre took steps to avoid detection. Aguirre does not claim that these circumstances are improper aggravators. *See Edrington v. State,* 909 N.E.2d 1093, 1101 (Ind. Ct. App. 2009) (proper to affirm sentence even if improper aggravator is considered, if we have "confidence the trial court would have imposed the same sentence" regardless), *trans. denied.* Based on the foregoing, we are confident the trial court would have imposed the same sentence even if it had not found the aggravator Aguirre challenges. Therefore, we conclude that the trial court did not abuse its discretion at sentencing.

### IV. *Inappropriate Sentence*

[39] Lastly, Aguirre argues that his aggregate 160-year sentence for his ten Counts of Level 1 felony child molesting convictions is inappropriate in light of the nature of the offenses and his character.

[40]    We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*. Whether a sentence is inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

[41]    When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. For his Level 1 felony child molesting offenses, Aguirre faced a sentencing range of twenty to forty years, with the advisory sentence being thirty years. I.C. § 35-50-2-4. The trial court sentenced Aguirre to the maximum forty years

for each of the ten Level 1 felonies, some running concurrently, and others consecutive for a total of 160 years executed.

[42] When exercising our power to review and revise a sentence, we are not required to compare a defendant's sentence with sentences received by other defendants in similar cases. *Corbally*, 5 N.E.3d at 471-72. "However, comparison of sentences among those convicted of the same or similar offenses can be a proper consideration when deciding whether a particular sentence is inappropriate." *Id*. at 472. "[A] respectable legal system attempts to impose similar sentences on perpetrators committing the same acts who have the same backgrounds." *Serino v. State*, 798 N.E.2d 852, 854 (Ind. 2003).

[43] In *Tyler v. State*, 903 N.E.2d 463, 465 (Ind. 2009), the defendant was convicted of two Counts of Class A felony child molesting, two Counts of Class C felony child molesting, and one Count of Class D felony vicarious sexual gratification for an incident involving five different children. He was sentenced to a total term of 110 years, which included an habitual offender enhancement. *Id*. Our supreme court reduced the sentence to a total of sixty-seven and one-half years. *Id*. It based the reduction upon the fact that the defendant did not use force on or physically injure the children, that he was not in a position of trust, and he had no prior sex offense convictions. *Id*. at 469.

[44] In *Monroe*, Monroe was convicted of five Counts of Class A felony child molesting. The trial court sentenced him to twenty-two years on each Count

with two years suspended to probation and ordered the sentences to be served consecutively for an aggregate sentence of 100 years. In considering the nature of the offense on appeal, our supreme court noted that Monroe was in a position of trust with his victim and molested the child repeatedly for over two years. *Id*. at 580. However, the court also observed that the five Counts were identical and involved the same child. *Id*. Regarding Monroe's character, the court noted that although he had a prior criminal history, all of his convictions were driving related, so his criminal history did not justify the imposition of consecutive sentences. *Id*. Based on these facts and circumstances, the supreme court concluded that the nature of the offenses and Monroe's character warranted enhanced, but not consecutive, sentences. *Id*. at 581. The supreme court revised Monroe's sentence to a maximum fifty-year term for each of the five Counts but ordered that they be served concurrently. *Id*.

[45] In *Harris v. State*, 897 N.E.2d 927 (Ind. 2008), Harris was convicted of two Counts of Class A felony child molesting and sentenced to consecutive fifty-year terms. *Id*. Our supreme court noted that Harris had occupied a position of trust with the eleven-year-old victim and had committed multiple uncharged acts of sexual misconduct that occurred over a period of time. *Id*. However, as in *Monroe*, the court observed that the two Counts of child molesting were identical and involved sexual intercourse with the same child. *Id*. Although Harris had a prior criminal record, the supreme court emphasized that he had no prior sex offenses in his record and concluded that his criminal history was

not a significant aggravator. *Id.* at 930. Based on the facts and circumstances of the case, the supreme court held that consecutive sentences were not warranted and revised Harris' sentence to two concurrent fifty-year terms. *Id.*

[46] The final case we mention for comparison purposes is *Pierce v. State*, 949 N.E.2d 349, 351 (Ind. 2011). In that case, the defendant repeatedly molested the ten-year-old daughter of his live-in girlfriend over the course of a year. He was convicted of three Counts of Class A felony child molesting, one Count of Class C felony child molesting, and was found to be a repeat sexual offender based upon a prior Class C felony molesting conviction. He received a total sentence of 124 years, but our supreme court reduced it to a total of eighty years. *Id.* at 353. It acknowledged the defendant's position of trust over the victim and that the offenses occurred repeatedly, but also noted that only one child was harmed. *Id.* It also noted that, aside from the prior molesting conviction that formed the basis of the repeat sexual offender enhancement, the defendant had no prior criminal history. *Id.*

[47] Turning to the nature of Aguirre's offenses, in a span of two years, Aguirre repeatedly molested A.G. who was seven or eight years old at the time.

[48] As for his character, we note that Aguirre maintained steady employment prior to being charged with the instant offenses. Aguirre's family also attested to his positive character traits. Further, we acknowledge Aguirre is an involved father in the lives of his two biological daughters from his previous marriage.

Although Aguirre has a criminal history, it is limited: he has one prior arrest in Illinois for driving with a suspended license. His PSI report reflects that he has two additional pending charges which were committed after the instant offenses—*i.e.*, Level 6 felony criminal confinement, and Class A misdemeanor intimidation.

[49] Aguirre claims that he did not use force when he committed the offenses, and that A.G. was the only victim. As such, he claims that his consecutive sentences are inappropriate in light of the nature of the offenses and his character.

[50] At the time of sentencing, Aguirre was thirty-three years old, and had a minimal criminal history, however, his prior convictions were not sex offenses. *See Monroe*, 886 N.E.2d at 580 (finding "six driving related misdemeanor offenses" unconnected to the charged molestations was "not substantial" and did not justify consecutive sentences). As was the case in *Harris* and *Pierce*, the ten Counts of child molestation were identical in some respect and involved the same child. *See also Monroe*, 886 N.E.2d at 580 (consecutive sentence of 100 years for five Counts of child molesting manifestly unreasonable in part because all Counts were identical and involved the same child). Further, although Aguirre asked A.G. to keep his acts secret, as was the case in *Tyler*, there was no evidence Aguirre used force or threats against A.G. when he committed these offenses.

The principle role of review under Rule 7(B) is to attempt to leaven the outliers. *Merida v. State*, 987 N.E.2d 1091, 1092 (Ind. 2013). In the instant case, the trial court ordered four consecutive sentences of forty years to four Counts out of the ten Counts, for a total executed sentence of 160 years. We are cognizant that crimes against children are particularly heinous. *See Pierce*, 949 N.E.2d at 352. Aguirre's position of trust over A.G. and the fact that there were repeated incidents of molestation, are egregious circumstances, but are similar to those in *Tyler*, *Harris*, *Monroe*, and *Pierce*. Indeed, the repeated occurrences and Aguirre's position of trust over A.G. warrant an enhanced sentence.

In considering the general guidelines enunciated in *Merida* and other cases involving ongoing molesting of a child in a position of trust by a defendant with little prior criminal history, we find that ordering some, but not all, of Aguirre's sentences to run consecutive, is warranted. Accordingly, we revise Aguirre's sentence to: concurrent terms for Counts I through IX, but consecutive to Count X. Thus, Aguirre's aggregate sentence is 80 years. *See Smith v. State*, 889 N.E.2d 261, 264 (Ind. 2008) (holding that a defendant's "repeated molestations . . . together with his violation of his position of trust [], warrant the sentence on one of these counts being imposed consecutive to one of the other counts").

# CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by admitting A.G.'s video forensic interview. Also, we hold that the

State presented sufficient evidence beyond a reasonable doubt to convict Aguirre of the child molesting offenses which he challenges on appeal. Further, we conclude that the trial court did not abuse its discretion at sentencing. However, we hold that Aguirre's 160-year aggregate sentence is inappropriate in light of the nature of the offenses and his character. Thus, we remand this case to the trial court with instructions to issue an amended sentencing order revising Aguirre's sentence to an aggregate sentence of 80 years.

[54] Affirmed in part, reversed in part, and remanded with instructions.

[55] Bailey, J. and Pyle, J. concur